FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 09, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTINE R.,[1] <br><br> Plaintiff, <br><br> v. <br><br> LELAND DUDEK, Acting Commissioner of Social Security,[2] <br><br> Defendant. | No.  2:24-cv-379-EFS <br><br> **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |

Plaintiff Christine R. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits.  Plaintiff claims she is unable to work due to physical and mental-health impairments. Because the ALJ's step-two finding that Plaintiff did not have a severe mental-health impairment is not

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Leland Dudek has been named the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is hereby substituted as the Defendant.

DISPOSITIVE ORDER - 1

supported by substantial evidence, this matter is remanded for further proceedings.

## I.     Background

In November 2022, Plaintiff applied for benefits under Titles 2 and 16, claiming disability beginning April 30, 2020, at the age of 38.[3] After the agency denied benefits, ALJ Lisa Raleigh held a telephonic hearing in April 2024, at which Plaintiff appeared without legal representation and testified, and a vocational expert also testified.[4]

The ALJ issued a decision denying benefits.[5] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and other evidence.[6] As to the medical opinions, the ALJ found:

- The state agency psychological medical findings of John Wolfe, PhD, and Leslie P., PhD; the examining medical opinions of Kayleen Islam-Zwart, PhD; and the treating medical opinions of Zachary Zorrozua, LICSW, CDP, not persuasive.

---

[3] AR 211–29.

[4] AR 44–95.

[5] AR 20–43. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[6] AR 29.

DISPOSITIVE ORDER - 2

- The state agency medical findings of Michael Jackson, MD, and Prianka Gerrish, MD, "more persuasive."[7]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through September 30, 2023.
- Step one: Plaintiff had not engaged in substantial gainful activity since April 30, 2020, the alleged onset date.
- Step two: Plaintiff had the following medically determinable severe impairments: bilateral carpal tunnel syndrome; hip bursitis; migraines; and cervical, thoracic, and lumbar degenerative disc disease. She also found the following non-severe impairments: borderline personality disorder, major depressive disorder, anxiety, and adjustment disorder.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

---

[7] AR 32–35. The ALJ also found the evaluation by Liz Bratcher, PT, not persuasive, noting that Mr. Bratcher was not an acceptable medical source. The ALJ did not mention whether Tyler Clifton, PT, was or was not an acceptable medical source, when finding his evaluation minimally persuasive.

DISPOSITIVE ORDER - 3

- RFC: Plaintiff had the RFC to perform light work except she can only frequently push/pull with her right upper extremity, frequently reach in all directions with the bilateral upper extremities, frequently handle and finger with the bilateral upper extremities, have frequent exposure to loud noise and vibration, and frequently climb, stoop, and crawl.
- Step four: Plaintiff can perform her past relevant work as a receptionist.
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff can perform work that exists in significant numbers in the national economy, such as marker, routing clerk, and cashier II.[8]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[9]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability

---

[8] AR 23–37.

[9] AR 1–6.

determination.[10] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11]

### III.  Analysis

Plaintiff argues the ALJ erred at several steps of the disability analysis, including at step two. The Commissioner argues the ALJ's decision is supported by substantial evidence. As is explained below, the ALJ consequentially erred at step two.

---

[10] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[11] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

**A.  Step Two: Plaintiff establishes consequential error.**

Plaintiff argues that the ALJ erred at step two by failing to classify her mental-health impairments as severe impairments. The Commissioner argues that the ALJ cited substantial evidence showing that Plaintiff's mental impairments were not severe, and any error would be harmless because the RFC accounted for all impairments. As is explained below, the Court agrees with Plaintiff's position.

   1.  Standard

At step two, the ALJ determines whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[12] This involves a two-step process: 1) determining whether the claimant has a medically determinable impairment, and 2) if so, determining whether the impairment is severe.[13] To be severe, the medical evidence must establish that the impairment would have more than a minimal effect on the claimant's ability to work.[14]

Neither a claimant's statement of symptoms, nor a diagnosis, nor a medical opinion sufficiently establishes the existence of an impairment.[15] Rather, "a

---

[12] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[13] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[14] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *see* Soc. Sec. Rlg. (SSR) 85-28: Titles II and XVI: Medical Impairments That Are Not Severe.

[15] 20 C.F.R. §§ 404.1521, 416.921.

DISPOSITIVE ORDER - 6

physical or mental impairment must be established by objective medical evidence from an acceptable medical source."[16] Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[17] If the objective medical signs and laboratory findings demonstrate the claimant has a medically determinable impairment, the ALJ must then determine whether that impairment is severe.[18]

The severity determination is discussed in terms of what is *not* severe.[19] A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to

---

[16] *Id.* §§ 404.1521, 416.921. *See also* SSR 85-28 at *4 ("At the second step of sequential evaluation … medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.").

[17] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019). *See also* 20 C.F.R. §§ 404.1502(f), 416.902(k), 416.913(a)(1).

[18] *See* SSR 85-28 at *3. Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." 20 C.F.R. §§ 404.1502(g), 416.902(l).

[19] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

work."[20] Because step two is simply to screen out weak claims,[21] "[g]reat care should be exercised in applying the not severe impairment concept."[22]

### 2. Mental-health treatment and examinations

The medical records include objective medical evidence supporting the existence of a mental-health impairment. In March 2021, Plaintiff sought treatment for anxiety and depression, requesting a behavioral health referral.[23] She was prescribed bupropion for depression and hydroxyzine for anxiety.[24] Then in May 2022, Plaintiff participated in an intake for behavioral health services.[25] She advised that she was still taking the prescribed medication; she was observed with cooperative attitude, normal insight and judgment, full affect, and euthymic mood; and she received a GAD-7 score of 17 (severe).

Days later she had a psychiatric diagnostic evaluation, wherein her GAD-7 score was 18 (severe) and her PHQ-9 score was 18 (moderately severe). The notes from the evaluation vary from indicating that Plaintiff was observed to be calm, cooperative, logical and linear in her thought process with intact insight and

---

[20] *Id.*; *see* SSR 85-28 at *3.

[21] *Smolen*, 80 F.3d at 1290.

[22] SSR 85-28 at *4.

[23] AR 486–90.

[24] AR 487, 480–82.

[25] AR 417–31.

judgment, to that she was 'very emotional today and wants to prioritize sleep," with anxious mood and attitude and labile affect, and that she cried "on and off during the assessment."[26] The evaluator noted that Plaintiff "presents today with [major depressive disorder], severe and GAD. She reports years of depression and more recently impulsivity."[27]

During a September 2022 Washington State Department of Social and Health Services encounter, the social service specialist noted that Plaintiff spoke clearly and that she appeared to understand the questions, but that her affect was flat and her "thought process appeared to be clouded and she was quite overwhelmed."[28]

During a medication-refill appointment in September 2022, Plaintiff was observed as cooperative with normal thought content and attention but with tangential speech, anxious mood, and tearful affect.[29] She was referred for behavioral health counseling and for a psychological examination.[30]

---

[26] AR 434, 444.

[27] AR 434.

[28] AR 510.

[29] AR 608.

[30] AR 607.

Days later, Dr. Islam-Zwart conducted a psychological examination by telephone.[31] She noted that Plaintiff was "quite emotional as she speaks."[32] She noted that Plaintiff reported "being reactive to situations that occur," that "it is hard to control her mood," "she will be doing fine and then someone has a tone or talks down to her and she gets upset and starts crying," that her emotional responses have "been worse the last year or two because she is so sensitive given the things that have happen[ed]," she takes her emotions out on others, she gets easily overwhelmed, and she has panic attacks.[33] She found Plaintiff to be orientated with a labile affect, as depressed and anxious, as "frequently emotional," as talkative and needing to be often redirected, to offer more information than was asked of her, with speech that was a little choppy, and seeming to be easily overwhelmed, but with no real indication of cognitive difficulty.[34] Based on the examination, Dr. Islam-Zwart opined that Plaintiff:

- was moderately limited in her abilities to: perform routine tasks without special supervision, be aware of normal hazards and take appropriate precautions, communicate and perform effectively in a work setting,

---

[31] AR 514–23.

[32] AR 519.

[33] AR 519–20.

[34] AR 522.

- maintain appropriate behavior in a work setting, and set realistic goals and plan independently.
- was markedly limited in her abilities to: adapt to changes in a routine work setting, complete a normal workday and workweek without interruptions from psychologically based symptoms; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and understand, remember, and persist in tasks by following detailed instructions.
- "would probably struggle to work at his [sic] time, but her prognosis [for] the future seems guarded to fair with access to intervention and stability."[35]

David Morgan, PhD. reviewed Dr. Islam-Zwart's report and agreed with her opined limitations.[36]

After the psychological examination, Plaintiff met with a social worker at Frontier Behavioral Health to complete an intake interview. Plaintiff presented as polite and cooperative but she "did become tearful at times throughout intake and appeared to become frustrated with herself for this based upon tone of voice and also apologizing multiple times for her tears."[37]

---

[35] AR 522.

[36] AR 536.

[37] AR 572.

Plaintiff participated in counseling with Debbie Bardwell, PhD, in November 2022.[38] Plaintiff was observed with rapid speech that was at times disjointed and choppy, as emotionally labile, as becoming quickly agitated and angry, and with no obvious indications of cognitive disability, and Plaintiff requested a more qualified provider.[39] Dr. Bardwell referred Plaintiff for dialectical behavior therapy (DBT) due to the borderline personality component of her needs.[40]

Plaintiff began therapy with one of the recommended DBT practitioners—Zachary Zorrozua, LICSW, CDP, two weeks later in December 2022.[41] Mr. Zorrozua observed Plaintiff with good eye contact, with normal speech, as sad/depressed, embarrassed/shameful, organized, future orientated, with intact recent and remote memory, intact attention/concentration, and with poor confidence/esteem and insight.[42] The record contains treatment notes for Plaintiff's weekly therapy with Mr. Zorrozua for the next two months, during which Plaintiff was observed with largely the same mental-health findings, including becoming visibly distraught during two sessions.[43]

---

[38] AR 576–81.

[39] AR 578.

[40] AR 581.

[41] AR 581, 832–34.

[42] AR 832–34.

[43] AR 812–31.

Also in March, John Wolfe, PhD, reviewed the then-available medical records and found Plaintiff had the following diagnosed severe mental impairments: depressive, bipolar, and related disorders; personality disorders; and anxiety and obsessive-compulsive disorders.[44] Dr. Wolfe opined that Plaintiff was moderately limited in the B Criteria of interacting with others and concentrating, persisting, or maintaining pace, and mildly limited in understanding, remembering, or applying information.[45] Dr. Wolfe noted that Plaintiff has "limited stress tolerance and works at a slower pace."[46] As a result, Dr. Wolfe opined that Plaintiff should interact with others on an occasional and superficial basis.[47]

From March through May 2023, Plaintiff had five appointments to manage her psychiatric medication.[48]

In July 2023, Leslie P., PhD, reviewed the available medical records and agreed with Dr. Wolfe's found diagnosed severe mental-health impairments, Criteria B ratings, and opined limitations.[49]

---

[44] AR 100–18.

[45] AR 101.

[46] AR 102.

[47] AR 105.

[48] AR 1028–50.

[49] AR 121–42.

In March 2024, Mr. Zorrozua wrote a letter stating that he has treated Plaintiff for major depressive disorder since December 2022.[50] He wrote that her symptoms have only "mildly improved" since he started treatment and that:

> Due to the past and current severity of her symptoms, there is no way that [Plaintiff] is capable of maintaining employment. We have addressed this topic in numerous sessions. While many of the challenges she faces are physical in nature (related to physical health conditions), her mental health symptoms continue to be a significant impairment that would make employment in any setting impossible.[51]

3. <u>The ALJ's step-two findings</u>

Although the ALJ found that Plaintiff had severe physical impairments, the ALJ found that Plaintiff's diagnosed borderline personality disorder, major depressive disorder, anxiety, and adjustment disorder—singly and in combination—were non-severe because they did not cause more than a minimal limitation on her ability to perform basic mental-work activities.[52] When reaching this finding, the ALJ found that Plaintiff had mild limitations in the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.[53] To support these findings, the ALJ relied on

---

[50] AR 407.

[51] AR 407.

[52] AR 26.

[53] AR 26–27.

Plaintiff's ability to "care for her children and pets, prepare meals, perform household chores, drive, use public transportation, shop in stores and by phone, pay bills, count change, handle a savings account, and use a checkbook/money orders."[54] In addition, the ALJ highlighted:

- Plaintiff had normal memory and understanding at her September 2022 psychological evaluation, intact concentration and recent and remote memory at her therapy sessions, and normal cognition and concentration at primary care appointments.
- She spelled WORLD forward and backward during her psychological exam, although she indicated she was unable to complete a serial 7s task.
- She had not been fired or laid off from a job due to problems getting along with other people.
- She reported that she spent time with others regularly and that she did not have problems getting along with authority figures.
- She interacted with many caregivers who did not note any mental-health problems.
- She purchased a vehicle for herself.
- She had worked part-time as a massage therapist.

---

[54] AR 26.

- She had normal judgment and insight at her mental health treatment appointments.[55]

In a later portion of the ALJ's disability evaluation, the ALJ found unpersuasive each of the psychological administrative findings and medical opinions.[56]

4. <u>Analysis</u>

The observations during Plaintiff's therapy, medication-management appointments, and the psychological examination are such that substantial evidence does not support the ALJ's decision to find no severe mental-health impairment. The ALJ cherrypicked the normal judgment/insight notations without considering that treating counselor Mr. Zorrozua consistently noted that Plaintiff's insight, particularly as to interpersonal relationships, was poor.[57] Likewise, Dr. Bardwell observed emotional lability, rapid speech, and quick agitation.[58] Considering the observations of Dr. Islam-Zwart and Plaintiff's mental-health care providers, the ALJ's finding that "[t]he record also indicates that the claimant has had to interact with many caregivers who do not note any mental health problems"

---

[55] AR 26–27.

[56] AR 32–34.

[57] *Compare* AR 27 ("The claimant had normal judgment and insight at her mental health treatment appointments (Ex. 1F).") *with* AR 812–34 (noting poor insight at each counseling session).

[58] AR 576–80.

is not supported by substantial evidence. Likewise, the ALJ's reliance on Plaintiff's ability to perform the listed daily activities does not provide substantial evidence to discount the opinions of Dr. Wolfe and Dr. P., as they were aware of these activities when they found that Plaintiff had severe mental-health impairments.

By unfairly relying on non-mental-health treatment records and opinions, the ALJ cherrypicked the evidence to reach a step-two finding contrary to each of the mental-health professionals.[59] The ALJ's step-two finding is not supported by substantial evidence. This error was consequential because no non-exertional limitation, such as Dr. Wolfe's and Dr. P.'s opinion that Plaintiff be limited to occasional/superficial interactions with others, was included in the RFC.

---

[59] *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings"); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (recognizing that as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms").

**B.    Other Steps: The ALJ must reevaluate on remand.**

Because the above errors impacted the ALJ's assessment of the medical evidence, the medical opinions, and Plaintiff's symptom reports, the Court does not analyze Plaintiff's remaining claims.

### IV.    Conclusion

Plaintiff establishes the ALJ erred. An ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process, while including a severe mental-health impairment.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 9**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 9th day of March 2025.

*Edward F. Shea*

EDWARD F. SHEA
Senior United States District Judge